IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-97
No. COA21-186

Filed 15 February 2022

Mecklenburg County, No. 17 CVD 6303

LISA WALKER-SNYDER, Plaintiff,

v.

GERARD REGIS SNYDER, Defendant.

Appeal by Defendant from order entered 20 May 2020 by Judge Tracy H. Hewett in Mecklenburg County District Court. Heard in the Court of Appeals 2 November 2021.

*No brief filed for Plaintiff-Appellee.*

*Arnold & Smith, PLLC, by Matthew R. Arnold and Ashley A. Crowder, for Defendant-Appellant.*

GRIFFIN, Judge.

¶ 1     Defendant Gerard Regis Snyder appeals from a domestic violence protective order entered against him and in favor of his daughter, Kristen Alexis Snyder. Kristen's mother, Plaintiff Lisa Walker-Snyder, pursued the order on Kristen's behalf. Defendant argues that the order should be vacated because (1) the trial court lacked subject matter jurisdiction to enter the order and (2) competent evidence did not support the trial court's conclusion that Defendant committed an act of domestic

violence. We conclude that the trial court had jurisdiction to enter the order but that the order was unsupported by competent evidence of domestic violence. We therefore vacate the order entered against Defendant.

## I.    Factual and Procedural Background

Defendant and Plaintiff are former spouses. On 21 November 2019, Plaintiff filed a motion in Mecklenburg County District Court requesting that the court issue a protective order against Defendant "with respect to both [Plaintiff] and the parties' minor child," Kristen, who was 17 years old at the time. Plaintiff alleged in her motion that "Defendant[] has committed acts of domestic violence against both Plaintiff[] and the minor child[.]"

On 17 February 2020, a hearing was held on Plaintiff's motion for a protective order. Plaintiff tendered exhibits showing text message exchanges between Defendant and Kristen which spanned from June to November of 2019. Kristen testified during the hearing and characterized Defendant's text messages to her as follows:

> A lot of them were just about my mom's litigation and. . . the interaction between them in court. Some of them were about college, and how he was no longer going to be able to pay for me to go. Some of them were odd, and earlier in the morning, about just either not paying for college or no longer being [able] to pay for my car. So it was those, basically, what I would receive.

When asked how the messages made her feel, Kristen testified, "I really thought that . . . it was really hurtful, and I just didn't know what . . . to do with all of this. . . . [I]t feels that I'm always anxious and upset to get these."

¶ 4 On 20 May 2020, the trial court granted Plaintiff's motion for a protective order with respect to Kristen but denied Plaintiff's request for a protective order for herself. The order stated that Defendant's text messages to Kristen "placed [Kristen] in fear of continued harassment that rises to such a level as to inflict substantial emotional distress[.]" Defendant timely filed notice of appeal from the trial court's order.

## II.  Analysis

¶ 5 Defendant argues that (1) the trial court lacked jurisdiction to enter the order because Kristen attained the age of majority before the order was entered and (2) competent evidence did not support the trial court's conclusion that Defendant committed an act of domestic violence. Although the trial court had jurisdiction to enter the order, we vacate the order for lack of competent evidence of domestic violence.

### A.  Jurisdiction

¶ 6 Defendant argues that the trial court lacked jurisdiction to enter the protective order because Kristen "had reached the age of majority" before the order was entered. Defendant contends that "[o]nce [Kristen] reached the age of 18," a protective order "could no longer be entered on her behalf[] as a minor child of Plaintiff[.]" We

disagree.

¶ 7        "Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question" and "is conferred upon the courts by either the North Carolina Constitution or by statute." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987) (citation omitted). With respect to domestic violence protective orders, subject matter jurisdiction is conferred by statute:

> Any person residing in this State may seek relief under this Chapter by filing a civil action or by filing a motion in any existing action filed under Chapter 50 of the General Statutes alleging acts of domestic violence against himself or herself or a minor child who resides with or is in the custody of such person. Any aggrieved party entitled to relief under this Chapter may file a civil action and proceed pro se, without the assistance of legal counsel. The district court division of the General Court of Justice shall have original jurisdiction over actions instituted under this Chapter.

N.C. Gen. Stat. § 50B-2(a) (2019).

¶ 8        We conclude the above-referenced statute provided the trial court with jurisdiction to enter the protective order. Kristen was seventeen years old when Plaintiff filed the motion for a protective order on her behalf. N.C. Gen. Stat. § 50B-2(a) provides that district courts "shall have original jurisdiction over actions instituted under this Chapter." *Id.* Because Plaintiff filed her motion while Kristen was still a minor, the trial court had jurisdiction to act on the motion and enter the protective order.

¶ 9          Plaintiff also argues that the trial court lacked jurisdiction because a summons was not issued to Defendant after Plaintiff filed her motion. *See id.* ("Any action for a domestic violence protective order requires that a summons be issued and served."). "The purpose of the summons is to[,]" *inter alia,* "give jurisdiction of the subject matter of litigation and the parties in that connection[.]" *In re K.J.L.*, 363 N.C. 343, 346, 677 S.E.2d 835, 837 (2009). However, "when the parties are voluntarily before the [c]ourt, and . . . a judgment is entered in favor of one party and against another, such judgment is valid, although not granted according to the orderly course of procedure." *Id.* (citation omitted). Because Defendant appeared at and participated in the hearing voluntarily, the trial court had jurisdiction to enter its order.

**B. Competent Evidence of Domestic Violence**

¶ 10          Defendant argues that the trial court's order was unsupported by competent evidence of domestic violence. Specifically, Defendant contends that there was no competent evidence to support the trial court's conclusion that Defendant "placed [Kristen] in fear of continued harassment that rises to such a level as to inflict substantial emotional distress." We agree.

¶ 11          We review a domestic violence protective order to determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Where there is competent evidence to support the trial court's findings of fact, those findings are binding on

appeal." *Hensey v. Hennessy*, 201 N.C. App. 56, 59, 685 S.E.2d 541, 544 (2009). "The trial court's conclusions of law are reviewable *de novo* on appeal." *Bunting v. Bunting*, 266 N.C. App. 243, 249, 832 S.E.2d 183, 188 (2019) (citation and internal quotation marks omitted).

¶ 12 "To support entry of a [protective order], the trial court must make a conclusion of law 'that an act of domestic violence occurred.'" *Kennedy v. Morgan*, 221 N.C. App. 219, 223, 726 S.E.2d 193, 196 (2012) (citing N.C. Gen. Stat. § 50B-3(a) (2011)). "Although N.C. Gen. Stat. § 50B-3(a) states that the trial court must 'find' that an act of domestic violence occurred, in fact this is a conclusion of law; the trial court must make findings of fact based upon the definition of domestic violence to support this conclusion[.]" *Id.* at 223, 726 S.E.2d at 196 n.2. "While the trial court need not set forth the evidence in detail[,] it does need to make findings of ultimate fact which are supported by the evidence; the findings must identify the basis for the 'act of domestic violence.'" *Id.* at 223, 726 S.E.2d at 196.

¶ 13 Here, the trial court concluded that Defendant's text messages to Kristen "placed [her] in fear of continued harassment that rises to such a level as to inflict substantial emotional distress." N.C. Gen. Stat. § 14-277.3A defines "harassment" as "[k]nowing conduct . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C. Gen. Stat. § 14-277.3A(b)(2) (2019). "The plain language of the statute requires the trial court to

apply only a subjective test to determine whether the aggrieved party was in actual fear; no inquiry is made as to whether such fear was objectively reasonable under the circumstances." *Bunting*, 266 N.C. App. at 250, 832 S.E.2d at 188 (citation omitted). "Substantial emotional distress" is defined as "[s]ignificant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." N.C. Gen. Stat. § 14-277.3A(b)(4).

¶ 14        We conclude that competent evidence does not support the conclusion that Defendant's texts to Kristen "torment[ed], terrorize[d], or terrifie[d]" her. N.C. Gen. Stat. § 14-277.3A(b)(2). When asked to describe Defendant's texts to her, Kristen testified,

> A lot of them were just about my mom's litigation and . . .
> the interaction between them in court. Some of them were
> about college, and how he was no longer going to be able to
> pay for me to go. Some of them were odd, and earlier in the
> morning, about just either not paying for college or no
> longer being [able] to pay for my car. So it was those,
> basically, what I would receive.

When asked how the messages made her feel, Kristen testified, "I really thought that . . . it was really hurtful, and I just didn't know what . . . to do with all of this. . . . [I]t feels that I'm always anxious and upset to get these."

¶ 15        At no point did Kristen's testimony indicate that she was in any state of fear because of Defendant's text messages to her. If anything, her texts to Defendant indicate the opposite. For example, after receiving one message from Defendant

about finances, Kristen replied, "Oh boy I'm really shook [laughing emoji.]" Her other responses to Defendant's messages were similarly flippant and did not indicate any state of fear. At no point did Kristen attempt to block Defendant from texting her. Instead, she continuously replied to the messages she received.

¶ 16     Moreover, Kristen's testimony did not assert substantial emotional distress stemming from Defendant's messages to her. Being generally "anxious" or "upset" about Defendant's conduct cannot constitute substantial emotional distress. If such feelings rose to the level of substantial emotional distress under N.C. Gen. Stat. § 14-277.3A(b)(4), then we would cease to have any real standard at all for "substantial" emotional distress.

¶ 17     We are mindful that "[w]here the trial judge sits as the finder of fact, and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge." *Wornstaff v. Wornstaff*, 179 N.C. App. 516, 519, 634 S.E.2d 567, 569 (2006) (citation and internal quotation marks omitted). "[T]he trial court was present to see and hear the inflections, tone, and temperament of the witnesses, and . . . we are forced to review a cold record." *Id.* Here, however, the Record contains no evidence that Kristen was "torment[ed], terrorize[d], or terrifie[d]" by Defendant's text messages to her. N.C. Gen. Stat. § 14-277.3A(b)(2). Her own testimony as well as her messages to Defendant indicate that she was not in any state of fear. There is also no evidence of

substantial emotional distress. We therefore vacate the protective order entered against Defendant for lack of competent evidence of domestic violence.

### III.    Conclusion

We hold that the trial court had jurisdiction to enter the order against Defendant pursuant to N.C. Gen. Stat. § 50B-2(a). However, we vacate the order for lack of competent evidence of domestic violence.

VACATED.

Judges MURPHY and JACKSON concur.